**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| TOM STAFFORD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Case No. 14-2254** |
| ) | |
| FLEXTRONICS INTERNATIONAL USA, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Tom Stafford has filed this diversity action against defendant Flextronics International

USA, Inc., asserting a claim of retaliatory discharge in violation of public policy based on Kan. Stat.

Ann. § 84-1-304.[1]  Defendant has filed a Motion to Compel Plaintiff's Claim to Arbitration and Stay

the Case Pending Final Resolution of the Arbitration; or, in the alternative, Dismiss this Case for

Failure to State [] Claim Under 12(B)(6); or, in the alternative, Stay all Discovery, Pre-Trial, and Trial

Proceedings in this Case Pending Resolution of Lightwild's Arbitration against Flextronics (Doc. 6).

In short, defendant argues that plaintiff should be compelled to arbitrate his claim or, alternatively, that

plaintiff has failed to state a recognized retaliation claim.  For the reasons stated below, the court holds

that plaintiff is subject to binding arbitration.

### I.      Facts

Defendant designs, manufactures, and distributes commercial and industrial products.  On June

15, 2012, defendant acquired the assets of Lightwild, L.C. ("Lightwild"), a commercial and industrial

lighting manufacturing company, pursuant to an Asset Purchase Agreement ("APA").  At the time of

the asset purchase, plaintiff was Lightwild's president and chief executive officer.  The APA required

---

[1] Kan. Stat. Ann. § 84-1-304 states: "Every contract or duty within the uniform commercial code imposes an obligation of good faith in its performance and enforcement."

defendant to hire plaintiff as part of the acquisition and contained an arbitration provision.  (Doc. 10-1 §§ 5.9, 9.4 (filed under seal).)  Plaintiff signed the APA as "President and CEO" of Lightwild.  (*Id.* at 60.)

The APA provided that defendant would pay Lightwild an "earnout" payment if Lightwild met certain gross-margin goals during the eighteen-month period following the acquisition closing.  The APA further provided that, "so long as [defendant] operates the Business in accordance with the plan for the business attached hereto as Exhibit F . . . , [defendant] shall be deemed to be operating in good faith, in the ordinary course of business and in a manner that is not intended to frustrate or diminish the Earnout Amount."  (Doc. 10 § 5.10.)  The APA refers to Exhibit F as the "Business Plan."  (*Id.*)  The Business Plan included certain assumptions on investment capital and projected new product growth over the first eighteen months.

Pursuant to the parties' agreement, defendant offered plaintiff an at-will vice president/general manager position in a letter dated June 19, 2012.  Plaintiff accepted the job offer the same day by signing the letter ("Offer Letter").  (Doc. 11-1 at 3.)  The Offer Letter set forth plaintiff's compensation, which included payment in stock awards that would vest if the acquired business (Lightwild) met certain gross-margin goals during the eighteen-month period following the acquisition closing.  (*Id.* at 1.)  Those target gross-margin numbers set forth in the Offer Letter were the same target gross-margin numbers set forth in the Business Plan and, according to plaintiff, "The communication and compensation outline clearly stated and connected Plaintiff to executing the [Business] Plan."  (Doc. 1 at ¶ 22.)

Plaintiff alleges the APA required defendant to run the newly acquired assets of Lightwild in a manner consistent with the past and to not frustrate Lightwild's ability to earn the anticipated gross margin.  (Doc. 1 ¶ 15.)  Plaintiff claims that defendant frustrated the gross-margin goals by not

implementing or following the Business Plan.  For example, plaintiff alleges that, in contravention of

the Business Plan, defendant began deemphasizing Lightwild's architectural products and pulling

resources away from selling those products that historically had generated high revenue.  Plaintiff

alleges that he complained to defendant about its failure to comply with the Business Plan and, when

he complained, he was fired.  In a rather creative cause of action, plaintiff claims that he engaged in

protected activity when he complained that defendant was not following the Business Plan which was,

plaintiff argues, a violation of defendant's duty to perform contracts in good faith under Kan. Stat.

Ann. § 84-1-304.  Plaintiff asserts that his discharge was therefore in violation of public policy.

Defendant argues that plaintiff's purported complaints that defendant was not following the

Business Plan bear no resemblance to the circumstances in which Kansas courts have applied the

public policy exception to the at-will employment doctrine.  While the court questions whether

plaintiff can state a cause of action under his novel theory, the court nonetheless declines to rule on

that issue because plaintiff is bound to arbitrate his claim.

## II.     Analysis

Defendant argues that plaintiff is bound to arbitrate his claim pursuant to the arbitration

provision contained in the APA.  Plaintiff claims he is not bound by the APA's arbitration provision

because he did not execute the APA in his individual capacity.  Plaintiff maintains that he is bound

only by the Offer Letter, which did not include an arbitration provision.

### A.  Legal Standards

There is a strong policy favoring the enforcement of parties' agreements to arbitrate.  *See*

*Consol. Brokers Ins. Servs., Inc. v. Pan–Am. Assurance Co.*, 427 F. Supp. 2d 1074, 1081 (D. Kan.

2006); *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (noting the national policy favoring

arbitration declared by Section 2 of the Federal Arbitration Act) (quoting *Southland Corp. v. Keating*,

465 U.S. 1, 10 (1984)).  As a general rule, uncertainties regarding the scope of arbitration should weigh in favor of arbitration.  *Id.* (citations omitted).  But arbitration is governed by contract—a party cannot be compelled to enter into arbitration if it has not agreed to do so.  *Id.* (citations omitted).  Whether a dispute is subject to arbitration is for the court to determine, unless the parties "clearly and unmistakably provide otherwise."  *Id.* (citations omitted).

"Although parties cannot be required to submit disputes to arbitration when they have not agreed to arbitrate those disputes, the Tenth Circuit has rejected the notion that disputes arising out of an agreement that lacks an arbitration clause are *ipso facto* not subject to the arbitration clause of a related contract."  *Id.* (citations omitted).  The Tenth Circuit has found that broad language of an arbitration clause in one agreement can cover matters arising out of an agreement not containing an arbitration clause.  *See, e.g.*, *ARW Exploration Corp v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1291–92 (10th Cir. 2004).  The District of Kansas has similarly ruled.  *See, e.g.*, *Armed Forces Ins. Corp. v. Allenbrook, Inc.*, No. 00-2435-GTV, 2001 WL 699735, at *2–4 (D. Kan. June 11, 2001); *LDS, Inc. v. Metro Can. Logistics, Inc.*, 28 F. Supp. 2d 1297, 1303–04 (D. Kan. 1998).  Thus, whether the Offer Letter contains an arbitration clause does not necessarily dictate whether plaintiff's claim in this lawsuit is subject to arbitration.

In cases such as this one, where one agreement contains an arbitration clause and the other does not, courts first look to the breadth of the arbitration clause.  If the clause is broad enough to cover all disputes related to the agreement, the court next determines whether the agreements are "sufficiently related to justify compelling arbitration of all claims arising under the agreements."  *Germains Seed Tech., Inc. v. R & R Mfg., Inc.*, No. 12-2737-CM, 2013 WL 978575, at *3 (D. Kan. Mar. 12, 2013) (citing *Consol. Brokers*, 427 F. Supp. 2d at 1082).  In evaluating whether the agreements are "sufficiently related," courts consider the following factors: "(1) whether the agreements incorporate or

-4-

reference each other; (2) whether the agreements are dependent on each other or relate to the same

subject matter; (3) whether the arbitration clause specifically excludes certain claims; [and] (4) whether

the agreements are executed closely in time and by the same parties." *Id.* (citing *Consol. Brokers*, 427

F. Supp. 2d at 1082).

Accordingly, to determine whether plaintiff's claim is subject to arbitration pursuant to the

arbitration clause in the APA, the court will first analyze the breadth of the arbitration clause to

determine whether the language is broad enough to cover this dispute between these parties.  The

arbitration clause in the APA contains language requiring arbitration for "any controversy or claim

arising out of or in any way connected with this Agreement or the alleged breach thereof . . . ."  (Doc.

10-1 § 9.4.)  Plaintiff has claimed that defendant did not follow the Business Plan, which was an

exhibit expressly referenced in and attached to the APA and, according to plaintiff, was a "central

guideline document to the [APA]."  (Doc. 1 ¶ 16.)  The court finds that the APA's arbitration provision

is very broad—requiring arbitration for claims *in any way* connected with the APA or its breach—and

that plaintiff's claim in this lawsuit is connected with the APA.  *See LDS, Inc.*, 28 F. Supp. 2d at 1303–

04 (finding broad language of arbitration clause in one agreement stating that "any controversy or

claim arising out of or relating to this Agreement" mandated arbitration for a dispute arising under

another agreement without an arbitration clause).  The arbitration clause language contained in the

APA is broad enough to cover plaintiff's wrongful discharge claim.

The court next turns to whether the APA and Offer Letter are sufficiently related to justify

compelling arbitration under the APA's arbitration provision.  As plaintiff points out, the APA and the

Offer Letter do not expressly incorporate each other.  However, the Offer Letter states that the

employment offer "is contingent upon the successful closing of the proposed acquisition of the assets

of Lightwild . . . ."  (Doc. 11-1 at 1.)  Thus, without the asset acquisition, there would have been no

offer of employment.  In other words, the Offer Letter was expressly dependent upon the APA.  And

given that the APA explicitly required defendant to offer plaintiff (and all Lightwild employees) a job,

the APA was similarly dependent on defendant's offer of employment to plaintiff.  The court finds that

the APA and the Offer Letter are dependent upon each other.

    The APA and the Offer Letter also relate to the same subject matter.  The court notes that the

APA was fifty-three pages long (exclusive of exhibits) and included numerous contractual provisions

involving the acquisition of Lightwild's assets—some of which related to plaintiff's employment,

some of which did not.  However, with regard to plaintiff's employment, the APA expressly required

defendant to hire Lightwild employees and stated that those employees would be at-will employees.

(Doc. 10-1 § 5.9.)  The APA also set forth that all Lightwild employees must meet defendant's

requirements for hire, which would include proof of identity and authorization to work in the United

States, execution of defendant's "Confidential Information and Inventions Agreement," and

completion of a background investigation.  (*Id.*)  Similarly, the Offer Letter provided that plaintiff

would be an at-will employee and included those same hiring requirements—proof of identity and

authorization to work in the United States, execution of defendant's "Confidential Information and

Inventions Agreement," and completion of a background investigation.  (Doc. 11-1 at 2.)  Moreover,

the compensation numbers set forth in plaintiff's Offer Letter were the same target numbers set forth in

the Business Plan attached to the APA.  The court finds that the Offer Letter and certain provisions of

the APA relate to the same subject matter: plaintiff's employment.

    Finally, the court looks to the timing of the APA and Offer Letter.  The APA was dated June

15, 2012, while the Offer Letter was dated just a few days later on June 19, 2012.  The court concludes

that the APA and Offer Letter were executed closely in time.  And while the APA was not signed by

plaintiff in his individual capacity, plaintiff nonetheless negotiated and signed the APA.

The court concludes that the APA includes a broadly-worded arbitration provision and that the APA and Offer Letter are sufficiently related to justify compelling arbitration of plaintiff's claim in this lawsuit.  Indeed, the connection between those claims explicitly subject to arbitration and the claim involved in this lawsuit are extremely close, rendering arbitration appropriate.  *Hemphill v. Ford Motor Co.*, 206 P.3d 1, 9 (Kan. Ct. App. 2009) (requiring arbitration where claims were closely intertwined with claims covered by arbitration provision).

The court also notes that, several days before plaintiff filed the instant lawsuit, Lightwild filed an arbitration demand against defendant alleging breach of contract and breach of good faith and fair dealing in performing the APA.  Given the close connection between plaintiff's and Lightwild's claims, the same discovery and issues will necessarily be involved in both actions before the arbitrator. It would make little sense to have parallel arbitration and court proceedings both devoted to determining defendant's performance under the APA.  Considering all the circumstances of this case, the court concludes that arbitration is appropriate.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Plaintiff's Claim to Arbitration and Stay the Case Pending Final Resolution of the Arbitration or, in the alternative, Dismiss this Case for Failure to State [] Claim Under 12(B)(6) or, in the alternative, Stay all Discovery, Pre-Trial, and Trial Proceedings in this Case Pending Resolution of Lightwild's Arbitration against Flextronics (Doc. 6) is granted.  Plaintiff is hereby directed to submit this claim to arbitration in accordance with the terms of the APA's arbitration clause.   This case is stayed pending arbitration.

**IT IS SO ORDERED.**

Dated this 18th day of December, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**

-7-